The next case for oral argument is United States v. Craft, Appellate No. 22-3015. Ms. Kelly should be appearing remotely. Good afternoon, Your Honors. My name is Attorney Anise Kelly and I represent Mr. Craft in this matter. Good afternoon. Can you hear us okay? I can. Can you hear me? Yes. Thank you. Thank you. Yes, I represent Mr. Craft in this matter. And I would, Mr. Craft raises two issues, the drug house enhancement and the supervisory role enhancement. I would like to focus on the drug house enhancement. In its ruling, the sentencing court said there was barely enough evidence for this enhancement. Mr. Craft argues that the court erred in this finding. In 2017, this court held in U.S. v. Contreras that use of the house must be more than incidental or collateral. Mr. Craft argues any use was incidental or collateral. Ms. Kelly, why is that the case if there's evidence showing that Mr. Craft and other people are sitting there at the table in the house planning what they're doing or the house seems to be kind of a way station for the drugs. They don't keep them there for months at a time, but they're there overnight. They're there for 24 hours, and that practice of using it as a way station seems to be, at least the evidence seems to indicate, is well established. So I wouldn't say this is the most extensive use of the house I've ever seen, but it doesn't have to be exclusive. So why don't we have maybe just enough here? A couple of points, Your Honor. There's no evidence in the record that the house was used for planning operations. And the government has distorted Mr. Schaffer's storage of the drugs at the house. And that's part of our argument. What the evidence shows, so the government has said repeatedly in its brief that Mr. Schaffer would get the drugs from Mr. Craft and bring them back to the house every time. Government puts it at 30 times or about twice a week. There's no evidence of that. Mr. Schaffer's testimony was that it occurred, quote, many times. The government, who has the burden of proof, never clarified what many times meant. In fact, Mr. Craft gave the drugs to Mr. Schaffer at a gas station. And in our mind, that's evidence of intent not to use the house as a drug house. And so if you focus on Mr. Craft's behavior, he gave the drugs more often than not. Mr. Schaffer testified that he got the drugs at a gas station, except for several times he got them at the house. And once again, there's no number on several times, and several times could be as few as three. He never, Mr. Craft never sold drugs at the house. No other indicia of drugs, house, or tools of the trade were found at the house. So basically, you have Mr. Craft giving to Mr. Schaffer, quote, several times, drugs at the house. But more often than not, they were at the gas station. Well, certainly the transfers are at the gas station. But I thought there was evidence in the record from which one could conclude, as I used the word waste station, that there is a brief use of the house commonly with these transactions. Then I think, as you said, it may not have been 30 times, but there was certainly testimony that he, on numerous occasions, took the drugs that he received at the gas station back to the home for up to 24 hours, not for a long time. On that point, Mr. Schaffer's testimony was, quote, many times. Again, a vague term that the government, who has the burden of proof, never quantified. So again, many times. Why wouldn't that be enough, though, if it's many? Why do we need a specific number? So again, the district court found on this evidence that there was barely enough, but included in the district court's finding on the barely enough evidence, was the source of income and the co-conspirator's activity. And it's Mr. Kraft's position that in a case like this, where there's barely enough evidence, the source of income and the co-conspirator's activity shouldn't be the main evidence, which it is in this case. And all the cases cited by the government to support the source of income or the co-conspirator's use, in all of those cases, before the court makes a finding of the use of the livelihood of the co-conspirator, they make an independent finding that the sentence defendant independently used the house substantially for drugs. For instance, in Beecher, the court characterized it as large quantities meant for later sale. In Sanchez, the court characterized it as massive amounts at the house. So those courts did not use that as the main evidence. So Mr. Kraft is asking this court not to extend those cases to allow the source of income or co-conspirator's actions to be the preponderance of evidence that tips the scale in a case with barely enough evidence for the enhancement, even with this evidence. And as I stated earlier, the government has distorted the co-conspirator's use of the house. Mr. Kelly, if I could ask you something, the instances where Mr. Kraft gave Mr. Schaefer the drugs at the gas station, was Mr. Schaefer still living at Mr. Kraft's house at the time? Yes. So again, that's more indicia that he did not intend to use the house as a drug house because they were living together. He easily could have given all of the drugs, every transaction could have taken place at the house. Instead, only, quote, several did. And my understanding from the record is that when Mr. Kraft, what Mr. Kraft would do is he would go to his supplier, grab the drugs, come back to the house because Mr. Schaefer lived there and gave it to Mr. Schaefer at the house. And then Mr. Schaefer would spend the night and then drive away and distribute it. Is that an accurate explanation or disposition of the record? No. Well, no, Your Honor. The vast majority, the record is clear. The vast, vast, vast majority of the transactions happened at the gas station. Mr. Schaefer testified there were times when it happened at the house, but that was certainly not the norm. The norm was the gas station and the government never established how many actually took place at the house. Is there any evidence that Mr. Kraft stored the drugs at the house before he gave them to Mr. Schaefer? The opposite. The evidence established he never sold drugs from the house and he never stored drugs from the house. The district court relies on the handful of incidences where Mr. Kraft gave Mr. Schaefer the drugs at the house and the co-conspirator's activity of using the house and the source of income. Why isn't the co-conspirator evidence appropriate to rely on? If it's reasonably foreseeable to the defendant, we rely on actions of co-conspirators or hold defendants accountable for actions of co-conspirators in many other circumstances, including amount of drugs. So why wouldn't it be appropriate, as long as it's reasonably foreseeable to Mr. Kraft, to rely on the actions of the co-conspirators at the house? Well, I would argue in this case where you're enhancing Mr. Kraft's sentence or any defendant's sentence on the use of their house as a drug house, the primary focus in all the cases, the primary focus is on the defendant's actions and then a supplemental is the co-conspirator's actions. But in this case, the government wants to make the co-conspirator the main evidence and Mr. Schaefer's actual use of the house, as I said, never sold, never stored, no indicia of any sort of drug use or drug transactions at the house. It's relied upon by Mr. Schaefer and the source of income. I see my time is up. Okay. Thank you, Ms. Kelly. Mr. Canestra? Good afternoon. Good afternoon, Your Honors. Jeff Canestra on behalf of the United States. The district court didn't clearly err in applying either of the enhancements here, beginning with the premises enhancement. Is clear error the appropriate standard? I know that we apply clear error to the district court's finding of facts, but as far as the district court determination that the facts so found qualify for the enhancement, that is a legal determination that we review de novo, isn't it? No. As this court explained within the last year in Vivarito, the fact-specific application of a legal rule is something that this court gives deference to on appeal. So in that case, I believe it was in a child pornography case whether it involved a certain sort of conduct being depicted in the materials. The district court found that it was. This court gave deference to that, even though the appeal involves some haggling over exactly what the standard meant. The court explained essentially that the fact-specific application of a legal rule is something that this court reviews deferentially. And so that applies equally to the district court's conclusion here that the use of the house for the drug activities was at least was more than an incidental or collateral purpose and qualified as a primary or principal purpose. Beyond that, the factual findings that the district court made amply support that conclusion. First, as your honors have already recognized, drugs are moving through this house frequently and also in significant amounts. And perhaps to clarify some of the testimony about that, Schaefer himself testified that there were many times when he had drugs with him at the house. He said that that was one of the reasons why he and the defendant would watch the security cameras together in the defendant's room because they were concerned about the law coming. And the reason Schaefer was concerned about that was that many times he had the drugs with him at the house. The pre-sentence report puts him— Typically only on that short-term basis, though, you know, up to 24 hours. That's correct. And the pre-sentence report is where the 30 occasions comes from. Schaefer himself said that on about 30 occasions— What report? I'm sorry. The pre-sentence report, and specifically at paragraph 36. He said that on about 30 occasions, Crafts gave him the drugs, and then he further testified at the hearing that when that occurred, he would have the drugs with him at the house until he left for Illinois to distribute them. And that, he said, was about within the day or within 24 hours that that would occur. But usually Craft delivers the drugs to Schaefer at a different location. And then Schaefer goes off to the gas station or whatever he's doing. That's correct. But Craft also, on occasion, delivered them at the house on at least several occasions to Schaefer himself. But does that get you over the line from incidental to sufficient use of the house to justify the enhancement? It's a very—as the district court judge commented, it's a very thin record. I think the district court appropriately characterized this as a close case, and that's exactly the sort of case where it's the district court's role to resolve which side of the line it falls and where this court defers. And I think it's not only that specific fact in particular. Of course, it's the number of times the drugs are moving through the house, the amount. As the district court noted, it was up to a pound or two at a time. And when it's up to a pound or two at a time, 30 times over four months, that's a very large amount. It's much—the activity is more significant than this court's decision in Contreras, where it was eight transactions, seven of which occurred over two months. Here it's about twice as often and twice as long. But they aren't sales. It's not sales, but it's still the interaction between the house and the drugs. On top of that, Craft would also receive proceeds there. And the district court appropriately recognizes—this court itself has recognized on multiple occasions— these activities and the proceeds they derived from them were critical to their livelihoods. They had no other jobs. They relied on these proceeds to support their rents. I don't know how that ties it to the house. I mean, the government makes the argument that they were using the proceeds in part to pay the rent or housing costs. But that does not, to me, tie anything to the house. That's an after-the-fact thing. I mean, it's just money, and I don't think that's a relevant factor. So the totem pole still has to be the activities that take place at the house. And then the use of the—or the reliance on proceeds for their livelihood is a way of gauging the significance of those activities and determining whether those activities are a principal or primary purpose. And that's exactly what this court has held on multiple occasions. This court has recognized whether the activities that occur at a house are a primary or principal purpose for maintaining the premises depends in part on the frequency and significance of the activities that occur there. And so this is relevant to the significance. As Edwin Sanchez, for example, noted, it found that the enhancement applied when the direct activities were significant in quantity,  So that really parallels the district court's findings here. They're significant in quantity, up to a pound or two at a time, 30 times over a few months. Significant in scope. We have deliveries occurring there. We have storage there, even for brief times. We have proceeds coming through the house. And they're also significant in importance to the defendant's livelihood. This is—his sole means of support is the proceeds that he derives from these activities. What should we make of the fact that Mr. Kraft handed off the drugs to Mr. Schaefer at a gas station away from his home? When he—I know there are a couple occasions he did it at the home, but the most—for the majority of them, it was somewhere else. Which, as Ms. Kelly pointed out, suggests he didn't want the distribution out of his house. Right. That's perhaps an inference that the district court could have drawn. It's not what the district court did find here. And a couple things to say about that. On the one hand, I think it shows that Kraft himself is sensitive about not having the drugs in his own hands, in his own possession. It shows that he's trying to get them in his co-defendants' and his distributors' hands as quick as possible, which also just kind of feeds into the manager-supervisor enhancement. I think, Judge Lee, the factual scenario you outlined earlier about how Kraft went to get the drugs and just handed them off to the gas station is likely correct. The record itself doesn't establish where the defendant was obtaining the drugs from, but the fact that he's going out and picking them up and then handing them off to Schaefer at the gas station, I think reflects that he's probably picking them up from a supplier. There's no evidence that he has some other storage facility that he's keeping the drugs at. But if it is a supplier, I mean, all we're talking about is whether this premises enhancement was appropriate for his sentence. We're not talking about his guilt. We're not talking about all sorts of other things. And so, as Judge St. Eve was saying, if he's going out of his way to make sure that he's not using the house, then why is the premises enhancement appropriate? Well, because he is using the house. First, on occasion, making deliveries himself. Let's hold the clock for just a second. We lost our monitor here. Ms. Kelly is still present on the other monitor. Ours just turned off. It did time out. It said that it was going to. I am here. For some reason, it muted me. There we go. Oh, there you are. Thank you. Sorry about that. So the defendant is still using the house. He is, on occasion, making deliveries there. And he knows that his co-conspirator is, in fact, using the house for this purpose. He knows that when he's giving his co-conspirator the drugs, after that, they're at home together. They're watching the security cameras, in part, to see if the drugs are coming, or if the law is coming, in part, because Schaefer had the drugs with him. And he knows that when Schaefer's there in the house with him, he's not on his way to Illinois to sell the drugs. So these are activities that Schaefer is engaging in in the house that further the defendant's drug distribution and that reflect the defendant's purpose for maintaining this premises. I think the Sixth Circuit really squarely addressed that in an opinion about a month or two ago in Terry, where it said that a court may consider the co-conspirator's conduct in applying this enhancement and that the co-conspirator's use of the defendant's premises is something that a court can count towards the activities that reflect the reason for which the defendant is maintaining the premises. And really, that's the case here. It is the defendant who's maintaining the premises. It is the defendant's purpose to facilitate or to use it for the purpose of drug distribution. And this is one of the ways in which he uses the house for that purpose, by allowing his co-conspirator to move into the house with him and then have the drugs with him there before he leaves for Illinois. We haven't discussed the manager-supervisor enhancement this morning. I'm happy to answer any of your questions on that. Does it matter that Mr. Kraft gave Mr. Schaffer the drugs before Mr. Schaffer stored it in the house temporarily and left? I mean, Kraft could have, if he wanted, right, he could have given it to Schaffer right before he left for his customers. It seems like one would seem to lean towards indicating that Kraft was using his house, wanted intentionally to use his house to store it, whereas the other, that Schaffer living there was just kind of more incidental. I think along those lines, if Kraft really wanted to distance his house from the drugs, he could have picked up the supply and met Schaffer at a gas station while Schaffer was on his way out of town. But that's not what he did. He picked up the drugs, would give them to Schaffer either at the gas station or at the house on occasion, and then the drugs would be at the house until Schaffer would leave within the next month. So essentially our position is that this was, as the district recognized, a close call, and that's exactly the sort of call for a district court to make, and we ask this court to affirm that decision. Thank you. Ms. Kelly, we will give you a minute. Thank you. Three quick points. Your Honor is correct that the standard of review is de novo for the application of the guidelines, and we would ask that the court not extend the co-conspirator to this thin of a record on Mr. Kraft's actual use of the house. The second thing is the court dismissed out of hand. It called it a bridge too far, this issue of the security cameras. The court rejected. It played no bearing in his ruling that the house was used for the enhancement. And the third thing is there's no evidence that Mr. Kraft knew that Mr. Schaffer was bringing the drugs back to the house after he gave them to him intentionally at the gas station. Thank you, Your Honors. Thank you, Ms. Kelly. The court will take the case under advisement. And Ms. Kelly?